## A97A2051. LOCKHART et al. v. SOUTHERN GENERAL INSURANCE COMPANY.
### (498 SE2d 161)

POPE, Presiding Judge.

The sole issue before us is whether the superior court properly granted summary judgment to Southern General Insurance Company in this direct action pursuant to OCGA § 46-7-58 (e).[1] Because we are constrained both by prior cases and the statutory scheme to so rule, we conclude that the superior court's decision was proper.

This lawsuit arose from a December 22, 1994 accident in which Glenn Lockhart's automobile struck a tractor-trailer driven by Richard Murray. On April 4, 1995, Lockhart and his wife Myra sued Murray and Southern General Insurance Company. The Lockharts alleged that Murray was a motor common carrier and that, because Southern General had issued liability insurance to Murray, the insurer was liable pursuant to OCGA § 46-7-58 (e). In their answers to the complaint and to discovery, both Murray and Southern General admitted that Murray had filed neither a bond nor an insurance policy in lieu of bond with the Public Service Commission (PSC). Both Murray and Southern General asserted that Murray was exempt from registration with the PSC because he hauled unmanufactured forest products.

Southern General filed a motion for summary judgment, arguing that it was not liable because the Lockharts failed to prove the essential elements of their right to proceed directly. Specifically, Southern General contended that the vehicle which Murray was driving had not been registered with the PSC, nor had a bond or a liability insurance policy in lieu of bond been filed with the PSC at the time of the accident. With its motion Southern General filed the affidavit of Lucia Ramey, the Director of Compliance & Safety of the Transportation Division of the PSC, in which she confirmed that her records indicated that Murray was not registered with the PSC as a motor common or motor contract carrier, and that no certificate of insurance had been filed indicating that Southern General Insurance Company was the insurance carrier for Murray.

In response to the motion, the Lockharts asserted that Murray was not exempt from registering with the PSC and that Southern General had subjected itself to OCGA § 46-7-58 (e) by issuing an insurance policy to Murray, who it was aware was a non-exempt motor contract carrier. The Lockharts filed a second affidavit of PSC

---

[1] OCGA § 46-7-12 (e) provides for direct actions against motor common carriers; § 46-7-58 (e) provides equivalently for direct actions against motor contract carriers. Although in the court below the parties interchanged the statutes, we will refer consistently to the provisions regarding motor contract carriers (OCGA § 46-7-50 et seq.).

official Ramey, stating that to satisfy the requirements of OCGA §§ 46-7-12 (c) and 46-7-58 (c), the PSC required the insurer of the motor carrier to file a certain "Form E" or certificate of insurance.

This case was stayed pending the resolution of *Southern Gen. Ins. Co. v. Waymond*, 221 Ga. App. 613 (472 SE2d 325) (1996), in which Murray Trucking, Southern General, and a virtually identical legal question were involved. After this Court issued its decision in *Waymond*, Southern General was granted summary judgment in this case.

Because the facts before the court in *Waymond* were virtually identical to those here, the resolution of this case is — as the superior court correctly determined — controlled by that case. In *Waymond*, this Court concluded that in order to maintain a direct action against the insurer under OCGA § 46-7-12 (e) or § 46-7-58 (e), a plaintiff must prove that — in lieu of bond — an insurance policy was filed with and approved by the PSC. The court further determined that the motor carrier, not the insurer, had the obligation of filing the insurance policy with the PSC. This Court reached the same conclusion in *Canal Ins. Co. v. Farmer*, 222 Ga. App. 539 (474 SE2d 732) (1996).

Here, as in *Waymond* and *Farmer* the PSC records reflected that neither a bond nor an insurance policy was filed with, nor approved by, the PSC. Furthermore, it was undisputed that Murray was not registered with the PSC as a motor common or motor contract carrier. In the absence of this evidence, this Court has concluded previously that no direct action against Southern General is allowable. See also *Glenn McClendon Trucking Co. v. Williams*, 183 Ga. App. 508 (1) (359 SE2d 351) (1987).

The Lockharts' argument that Southern General is liable because it was aware that Murray Trucking was subject to PSC regulation is without merit.[2] This Court addressed this argument in *Waymond* and concluded that whether Southern General was aware of Murray Trucking being subject to PSC regulation had no bearing on the insurer's liability, stating: "[a]ssuming arguendo, however, that Murray Trucking was subject to PSC regulation and that Southern General had knowledge of this fact, neither the direct action statute nor *Glenn McClendon* provides an exception when the insurer

---

[2] And, contrary to the Lockharts' contentions, the Court made no determination in *Southern Gen. Ins. Co. v. Waymond* regarding whether Murray was exempt from regulation under OCGA § 46-1-1 (7) (C) (x) or (xi) (now designated as OCGA § 46-1-1 (9) (C)). In this regard, see *Smith v. Southern Gen. Ins. Co.*, 222 Ga. App. 582 (474 SE2d 745) (1996), in which this Court concluded that because there was no dispute that the insured was acting as a timber hauler, no direct action could be maintained against it. Because it is not necessary to our holding here, we do not address the Lockharts' argument that *Smith* did not properly consider all of the requirements of OCGA § 46-1-1 (7) (C) (x).

had or should have had such knowledge. We find nothing in this Court's holding in *Glenn McClendon* that authorizes an exception to the rule that an essential element of proof is evidence of filing with and approval of a policy by the PSC. Waymond is attempting to impose a responsibility on Southern General not provided for by the statute, a statute that must be strictly construed. This responsibility of filing a bond or insurance policy in lieu of bond is with the motor carrier, not the insurer. OCGA §§ 46-7-53 (a); 46-7-58 (a)." *Southern Gen. Ins. Co. v. Waymond*, 221 Ga. App. at 615-616. The Lockharts' argument that the evidence regarding the PSC rules alters this conclusion is without merit. Contrary to the position taken by the dissent, the logistical requirements the PSC has regarding the Form E do not resolve the question of whether the insurer's obligation to file the form ever arises in the first place.

Although the fact that there is no statutory obligation for the insurer to file proof of the policy may partially subvert the statute's purpose, see *Canal Ins. Co. v. Farmer*, 222 Ga. App. at 541 (Pope, P. J., concurring specially), it is the role of the legislature — not of this Court — to remedy any such loophole. The present statutory scheme simply does not require an insurer to file a policy for a motor carrier which is not registered with the PSC.

Our Supreme Court illuminated this policy in the recently decided *Ross v. Stephens*, 269 Ga. 266 (496 SE2d 705) (1998). In *Ross*, the court resolved that when a motor common carrier's vehicle was not specifically described in the insurance policy, the PSC Form F regarding the statutory minimum coverage controlled the amount of coverage, regardless of the amount of coverage provided for in the individual policy. In so deciding, the court stated: "A motor [contract] carrier may not operate in Georgia without obtaining from the PSC a certificate of public convenience and necessity [(OCGA § 46-7-53)], and a certificate is not issued unless the applicant gives and maintains bond, with adequate security 'for the protection of the public against injuries proximately caused by the negligence of such motor carrier, its servants, or its agents.' [OCGA § 46-7-58 (a).] In lieu of bond, the certificate holder may file a policy of indemnity insurance which is approved by the commission and substantially conforms to all the statutory provisions relating to bonds [(§ 46-7-58 (c))], or the commission may permit a motor [contract] carrier to self-insure. [OCGA § 46-7-58 (d).] Whatever means the [contract] carrier chooses to evidence its potential financial responsibility to the motoring public, the bond, insurance or self-insured plan 'is a direct and primary obligation' to any person who sustains actionable injury or loss as a result of the negligence of the [contract] carrier or its agents. [Cit.]" *Ross v. Stephens*, 269 Ga. 266-267. Under the present statutory scheme, it is not the role of the insurer to register the contract carrier

with the PSC, nor is it the insurer's responsibility to file the insurance policy. That obligation is the carrier's.

Moreover, in order to take the position of the dissent, it would be necessary to overrule not only *Southern Gen. Ins. Co. v. Waymond,* 221 Ga. App. 613, but also *Glenn McClendon Trucking Co. v. Williams,* 183 Ga. App. 508; *Canal Ins. Co. v. Farmer,* 222 Ga. App. 539; and the recently decided *Caudill v. Strickland,* 230 Ga. App. 644 (498 SE2d 81) (1998).

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., Beasley, Johnson, Smith, Ruffin and Eldridge, JJ., concur. McMurray, P. J., and Blackburn, J., dissent.*

BLACKBURN, Judge, dissenting.

I respectfully dissent from the decision of the majority, which relied upon *Southern Gen. Ins. Co. v. Waymond,* 221 Ga. App. 613 (472 SE2d 325) (1996), which was wrongly decided. *Southern Gen.* involved the same issues as the present case. Each of the cases arose out of a collision between a log truck and trailer insured by Southern General and a vehicle driven by another. In each case, the plaintiff joined Southern General in its action against the tortfeasor under the authority of OCGA § 46-7-12 (e). Summary judgment was improper in this case and in *Southern Gen.* because an insurance company cannot create a defense to being named a party in a direct action pursuant to OCGA § 46-7-12 (e) by the simple expedient of failing to satisfy its duty to file an appropriate certificate with the PSC regarding a non-exempt motor contract carrier to which the insurance company has extended coverage.

The majority in each case holds that a plaintiff, in order to bring a direct action, must prove a bond or an insurance policy was filed with the PSC and approved by it. The majorities further hold that this rule applies even where the insurance company knows or should know that the motor carrier is subject to PSC regulation, as it is the motor carrier and not the insurance company, who has the responsibility of filing a bond or insurance policy with the PSC.

Indeed, as a result of this holding, the majorities did not even address the issue in either case of whether the defendant trucker was exempt from PSC regulation as a hauler of agricultural products under OCGA § 46-1-1 (9) (C) (x) (amended OCGA § 46-1-1 (7) (C)). Recognizing the inequity of its holding, however, the majority in the present case contends that it is up to the legislature to close this loophole, which allows an insurance company to defeat a plaintiff's statutory right to add them as a party in a direct action, by failing to perform their legally imposed duty to file a Form E, Certificate of Insurance. I believe, however, that the loophole which causes the majority's concern does not exist.

At its core, the majority's opinion relies upon the view expressed in *Southern Gen.*, that an insurance company has no duty to make filings with the PSC, focusing specifically on the filing of bonds or insurance policies. This focus is too narrow. Lucia Ramey, Director of Compliance & Safety of the Transportation Division of the Georgia Public Service Commission, testified that, since 1979, the PSC has neither approved nor accepted for filing policies of insurance. Instead, prior to issuing a certificate to a motor common carrier or motor contract carrier, the PSC requires the *insurance company* to file a Certificate of Insurance, designated "Form E." PSC Rules 1-8-1-.01 and 1-8-1-.07. Form E, which must be signed by an authorized representative of the *insurance company*, includes a certification by the *insurance company* that a policy has been issued, an agreement by the *insurance company* to file duplicates of the insurance policy if requested, and an agreement by the *insurance company* to give the PSC notice if the policy is cancelled. Clearly, then, Form E places the onus for filing on the insurance company, not the motor carrier. The majority in this case, however, contends that the logistical requirements imposed by the PSC with regard to Form E do not resolve the question of the insurer's obligation to file such form. However, the demands for present and future information and compliance by the insurance company, which the majority discounts as merely logistical, are nonetheless *requirements* of the insurance company, not requests. As such, there should be no question that the insurance company would be obligated to file its Form E answer which is *required* by the PSC.

Thus, it cannot accurately be said that an insurance company has no duty to make filings with the PSC. In fact, just the opposite is true. Therefore, if an insurance carrier knows or should know that a motor contract carrier to which it has issued a policy should be registered with the PSC and is not exempt therefrom, it *does* have a duty to file an appropriately completed Form E. Furthermore, *Ross v. Stephens*, 269 Ga. 266 (496 SE2d 705) (1998), which is cited by the majority, does not *negate* any duty of an insurer to file with the PSC. In addition, it must be noted that in *Ross*, the insurance company, not the motor common carrier, filed the certificate of insurance and Form F with the PSC.

Accordingly, it becomes not only necessary, but pivotal, in *Southern Gen.*, in this case, and in others like it, to determine whether the motor carrier was exempt from the registration requirements of the PSC, thereby relieving the insurance company of its duty to file Form E.

OCGA § 46-1-1 (9) (A) defines a motor contract carrier as "every person, except common carriers, owning, controlling, operating, or managing any motor propelled vehicle . . . used in the business of

transporting persons or property for hire over any public highway in this state and not operated exclusively within the corporate limits of any city." In turn, OCGA § 46-1-1 (6) defines "for hire" as "an activity wherein for compensation a motor vehicle and driver are furnished to a person by another person, acting directly or knowingly and willfully acting with another to provide the combined service of the vehicle and driver, and includes every person acting in concert with, under the control of, or under common control with a motor carrier who shall offer to furnish transportation for compensation."

The Georgia Code exempts certain carriers from the categories of motor contract carrier and motor common carrier. OCGA § 46-1-1 (9) (C) (x) exempts "[m]otor vehicles engaged exclusively in the transportation of agricultural or dairy products, or both, between farm, market, gin, warehouse, or mill, whether such motor vehicle is owned by the owner or producer of such agricultural or dairy products or not, so long as the title remains in the producer. . . . [T]he term 'agricultural products' includes . . . lumber . . . and timber or logs being hauled by the owner thereof or [the owner's] agents or employees between forest and mill or primary place of manufacture." The burden of proof as to whether this exemption is applicable in a given case lies with the party claiming it. *Ga. Cas. &c. Co. v. Jernigan*, 166 Ga. App. 872, 874 (1) (305 SE2d 611) (1983).

Summary judgment in this case was clearly improper because Southern General failed to meet its burden of establishing its insured's entitlement to this exemption, thereby alleviating itself from a duty to file Form E. Southern General failed to prove that Murray was engaged exclusively in the transportation of timber, that title to such timber remained in its producer, and that Murray was acting as an agent or employee of the owner of the timber, each of which was necessary in order to establish an entitlement to an exemption.

Southern General contends, however, that the exemption from classification as a motor common or motor contract carrier set out in OCGA § 46-1-1 (9) (C) (xi) for "unmanufactured agricultural products" should be applicable to Murray. Southern General argues that the term "unmanufactured agricultural products" used in division (xi) should include logs and timber, notwithstanding the fact that logs and timber are not specified therein.

This issue has been decided adversely to Southern General by this Court. Southern General's "contentions are fatally flawed. . . . [H]ad the legislature intended [logs and timber] to be included, they would have specifically listed [them] within the terms of the exemption as they did in division (x). Furthermore, a statute shall be construed so as to give full force and effect to all of its provisions and so as to reconcile any apparent conflicts. Division (x) contains specific

restrictions which must be met by carriers of [timber and logs] in order to qualify for the exemption. These restrictions are not contained in the exemption provided in division (xi). If [logs and timber were] included within the term 'unmanufactured agricultural products' under division (xi), the restrictions of division (x) would be rendered meaningless, which is contrary to the rules of statutory construction." (Citations and punctuation omitted.) *Stewart v. Liberty Mut. Ins. Co.*, 221 Ga. App. 813, 814 (472 SE2d 704) (1996). Accordingly, this exemption does not apply to Murray, and Southern General is not relieved of its duty to file a Form E with the PSC.

It should be remembered that "[t]he purpose of permitting joinder of the [i]nsurance [c]ompany in a claim against [a] common carrier is to further the policy of the Motor Carrier Act, that is, to protect the public against injuries caused by the motor carrier's negligence." *Andrews v. Yellow Freight System*, 262 Ga. 476 (421 SE2d 712) (1992). We should not allow this intended protection to be diminished by allowing an insurance company to avoid direct actions by failing to satisfy its duty to file an appropriate certificate with the PSC regarding a non-exempt motor contract carrier to which the insurance company has extended coverage.

In *Southern Gen.*, this Court ignored the filing by insurance carriers of Form E pursuant to the requirements of PSC regulations which imposed such a duty and the fact that bonds and policies have not been filed with the PSC since 1979. It is inappropriate for this Court to defeat the statutory right given by the legislature to the public to join insurance carriers under the facts of this case, by a narrow reading of OCGA § 46-7-58 (e) and the ignoring of applicable PSC regulations and of the practice of the PSC in such matters since 1979. All applicable statutes and rules must be read together to determine the intention of the regulations.

It is little wonder that no amendment to the statute has ever been sought, as plaintiffs rarely have but a single case, and it works totally to the advantage of insurance carriers in its present state under the erroneous holding of this Court.

To the extent that it purports that an insurer who knows or should know that its insured is a motor contract carrier, I would overrule *Southern Gen.* and reverse the trial court's holding and the majority's affirmance thereof in the present case, each of which was controlled by said case.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED MARCH 18, 1998

*Davis, Gregory, Christy & Forehand, Hardy Gregory, Jr., Preyesh K. Maniklal, Terrance, Patrick, Leiden & Associates, Terry Leiden, Zane P. Leiden*, for appellants.

*Glover & Blount, Percy J. Blount, Michael J. Moses*, for appellee.